UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JENNIFER GREEN, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | Judge Joan B. Gottschall |
| v. | ) | |
| | ) | No. 13 C 6709 |
| TEDDIE KOSSOF'S SALON & | ) | |
| DAY SPA, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Jennifer Green ("Green") alleges that defendant Teddie Kossof's Salon & Day Spa (the "Spa") unlawfully terminated her employment. Green brings claims against the Spa for gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and for disability discrimination and failure to provide reasonable accommodation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Now before the court are the parties' cross-motions for summary judgment. For the reasons explained below, the Spa's motion is granted in part and denied in part, and Green's motion is denied.

### I. FACTS

The Spa is a business that performs facials, hair services, nail services, massage, and body treatments in Northfield, Illinois. It employs approximately seventy-seven employees and is operated by Alan Kossof. Kossof makes the final determination on all hiring and firing decisions.

One of Kossof's direct reports is Dorota Jedrzejek. She supervises the employees who perform massage and body treatment services. Jedrzejek oversees a staff of seven people, all of whom are women. Since July 2012, all of her staff has been women.

In 2012 and 2013, the Spa employed five massage therapists. They were all women. Massage therapists are scheduled for work in advance, depending on the needs of the business. The Spa maintains a policy that massage therapists be present during their scheduled shifts. However, the Spa does not have any written policies concerning vacation, sick leave, or attendance. If an employee needs a day off due to illness or other reason, the employee customarily calls the Spa to inform his or her manager, who then would adjust personnel scheduling as necessary.

On June 26, 2012, the Spa hired Green as a massage therapist. She was paid on a commission per service rendered, plus tips, basis. Green's direct supervisor was Jedrzejek. Throughout the entirety of Green's employment, the Spa never took issue with her performance as a massage therapist. When Green attended work, she provided the expected level of service to the Spa's clients. Green was never disciplined or reprimanded in connection with her performance of massages.

Shortly after Green gained employment with the Spa, she notified Jedrzejek and Kossof that she suffered from lumbar radiculopathy, a chronic condition that causes episodic back pain. When Green's lumbar radiculopathy flares, pain radiates across her hip and down her legs. The condition also causes numbness and gives Green "trouble walking, standing for long periods, sitting for long periods, [and] sleeping." (Green Dep. 81:20-82:8).

At times during her employment, Green experienced these symptoms and could not carry out her duties as a massage therapist. On November 14, 2012, for instance, Green visited a pain clinic to alleviate the symptoms her lumbar condition was causing. Green cannot recall how many times the symptoms caused her to call off any portion of a workday or cancel massage sessions. Jedrzejek avers that "Green developed a habit of calling in sick to work shortly before

her scheduled appointments were to begin." Jedrzejek Aff. ¶ 16. When Green called that she would be off work shortly before her scheduled appointments were to begin, another massage therapist had to fill in for Green. If no one could cover for Green, the appointment had to be canceled.

On January 29, 2013, Green was admitted to an emergency room after experiencing intense cramping, lightheadedness, bleeding, and vomiting. Medical staff determined that Green had developed an ovarian cyst. While in the hospital, Green was prescribed medication to alleviate the symptoms. For the next two weeks, Green was unable to predict the onset of symptoms related to her ovarian cyst. She reported to the Spa that the condition and medications she was taking affected her ability to perform her job.

On February 18, 2013, Green was scheduled to work but called the Spa to report that the cyst was causing her pain and exacerbating her lumbar radiculopathy. Green also informed the Spa that she had taken medication to alleviate the pain, and that the medication had affected her ability to drive safely and perform massage therapy. Green requested the day off.

In response, Kossof told Green that she either "needed to come in and do [her] [massage] sessions, (Green Dep. 45:21-23, 48:15-22), or apply for leave pursuant to the Family Medical Leave Act. Green then asked if she could skip her morning appointment and perform her scheduled afternoon sessions as an accommodation, so that the medication would have time to wear off. The record does not indicate whether or how Kossof responded to this request, but Green testified that she ultimately performed all three of her scheduled massages, including the morning appointment.

On the morning of February 19, 2013, Green again called the Spa and stated that she was unable to come to work. This time she stayed home. The following day, Kossof phoned Green

and told her she was terminated.  Green alleges that Kossof acknowledged that he was terminating her because she had "too many medical problems."  Compl. ¶ 9.  Green testified that she was given no prior warnings, verbal or written, that her work attendance was a problem; nor is there any evidence in the summary judgment record showing that the Spa gave her such a warning.  Green testified that she asked Kossof to reconsider his decision during their phone conversation on February 20, 2013.  Green told Kossof that she loved her job, to which Kossof replied, "Sometimes we're not able to do the things that we love."  (Green Dep. 41:12-16).  Green testified that she was "fine and off [the] medication] two weeks after [she] was terminated."  (Green Dep. 77:2-3).

While Green was a Spa employee, she requested accommodations for her lumbar radiculopathy and ovarian cyst.  At times, she suggested that the Spa hire more staff, including massage therapists.  Green also requested a modified a work schedule; whenever Green performed more than four massages in a given day, the additional appointments tended to push Green beyond her physical limits.  And, Green requested that she be allowed to use a massage room of her choice.  The Spa has three dedicated massage rooms.  One is located upstairs and requires the massage therapist to make frequent trips downstairs to wash laundry and restock supplies.  The other two rooms, "Room Four" and "Room Five," are both on the main level; Room Four is smaller and not equipped with a traditional massage table.  Green preferred Room Five because working in either the upstairs room or Room Four tended to trigger the symptoms of her lumbar radiculopathy.  The Spa permitted Green to use Room Five, unless one of the other massage therapists, Barbara Babicz, reserved the room.  The Spa deferred to Babicz's request because she had seniority over Green as an employee.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## III. ANALYSIS

### A. Discrimination under the ADA

Green alleges that the Spa violated the ADA when it terminated her for her disabilities. "To prevail on an ADA claim, a plaintiff must show that (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) her employer took an adverse job action against her because of her disability or without making a reasonable accommodation for it." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013).

The Spa contends that Green has failed to submit evidence to satisfy any of the elements of her claim. Accordingly, the court must address the sufficiency of Green's proof with respect to each element.

### i. Disability

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. . . ." 42 U.S.C.A. § 12102. In this case, Green identifies two physical impairments that constitute disabilities under § 12102(A): her lumbar radiculopathy and the ovarian cyst she developed shortly before being terminated. The Spa does not dispute that both conditions constitute physical impairments. Rather, the Spa maintains that Green has failed to adduce evidence demonstrating that either condition "substantially limited" one of Green's major life activities so as to qualify as a "disability."[1]

The Code of Federal Regulations clarifies that "[a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). However, the term, "'[s]ubstantially limits, is not meant to be a demanding standard," and "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." § 1630.2(j)(1)(i), (iii). "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." § 1630.2(j)(1)(iii). And in all cases, the term "substantially limits" must "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." § 1630.2(j)(1)(i).

---

[1] "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

Here, the record shows that Green's physical impairments fall within the scope of the ADA. Her lumbar radiculopathy is a chronic condition that causes episodic back pain. "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D)). When Green's lumbar radiculopathy flares, pain radiates across her hip and down her legs. The condition also causes numbness and gives Green "trouble walking, standing for long periods, sitting for long periods, [and] sleeping." (Green Dep. 81:20-82:8). These limitations on Green's major life activities are sufficient for the court to find that her lumbar radiculopathy qualifies as a disability.

Similarly, Green's ovarian cyst also substantially limited her ability to perform major life activities. "Under the 2008 amendments, a person with an impairment that substantially limits a major life activity, or a record of one, is disabled, even if the impairment is 'transitory and minor' (defined as lasting six months or less)." *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (quoting 42 U.S.C. § 12102(1)). Green was diagnosed with her ovarian cyst on January 29, 2013, when she was admitted to a hospital emergency room. According to Green, the cyst caused her to experience intense cramping, profuse bleeding, lightheadedness, and vomiting, among other symptoms. While in the hospital, Green was prescribed medication to alleviate the symptoms. She testified that she was "fine and off [the] medication] two weeks after [she] was terminated." (Green Dep. 77:2-3).

The Spa argues that Green "has provided no evidence from a medical professional or expert" to demonstrate that her ovarian cyst substantially limited a major life activity. But this argument is both factually incorrect and misstates her burden of proof. "The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or

7

statistical analysis." 24 C.F.R. § 1630.2(j)(1)(v). In this case, Green's testimony indicates that her ovarian cyst, though transitory, substantially limited her performance of major life activities. That is sufficient to defeat the Spa's motion for summary judgment with respect to this element.

### ii. Qualified

Only "qualified individuals" may bring suit under the ADA. *See Gogos*, 737 F.3d at 1172; 42 U.S.C. § 12111(8). The ADA defines a "qualified individual" with a disability as "an individual who, without or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.*

The Spa argues that Green cannot prove she was qualified for the position of massage therapist because she was absent from work too often. "It should not require saying that generally attendance is a requirement of a job." *Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999). Indeed, "in many instances," the Seventh Circuit has held that "irregular attendance can prevent an individual from performing the essential functions of his or her job." *Preddie v. Bartholomew Consol. Sch. Corp.*, No. 14-cv-3125, 2015 WL 5005203, at *5 (7th Cir. Aug. 24, 2015) (citing cases).

Here, however, there is insufficient evidence in the summary judgment record for the court to conclude that Green's absences prevented her from performing the essential functions of her job. The evidence the Spa submits to prove Green's absenteeism consists of an affidavit from Green's supervisor, Jedrzejek. Jedrzejek avers that Green "developed a habit of calling in sick to work shortly before her scheduled appointments were to begin." Jedrzejek Aff. ¶ 16. Green, a pro se plaintiff, denies that she developed such a habit, but she did not depose Jedrzejek to test her averments. Nonetheless, Jedrzejek's affidavit provides no insight into how many times Green actually cancelled her appointments "shortly before" they were scheduled to begin.

8

*Id.* The court cannot find Green's claim deficient as a matter of law solely based on Jedrzejek's conclusory and unsubstantiated averment.

Other deficiencies in the summary judgment record exist as well. Green, not the Spa, produced employment records to show when Green and her coworkers were absent from work. Although these records were informative, they left the court with more questions than answers. The records include each employee's weekly time sheets over an approximately six-month span. When an employee missed a scheduled client appointment, the Spa used one of four designations to note the absence: (1) "Off(S)"; (2) "Requested Off(S)"; (3) "Sick(S)"; and (4) "Called in Sick(S)."[2] Between June 3, 2012 and March 3, 2013, the Spa marked Green as accumulating twelve "Sick(S)" or "Called in Sick(S)" days. Even if these employment records are accurate,[3] they raise a fact issue as to whether Green's absences prevented her from performing her job duties, especially since the Spa has admitted that it does not maintain any written attendance

---

[2] The "(S)" signifies "scheduled" to work.

[3] Neither Green nor the Spa addresses whether the business records Green submitted in opposition to the Spa's motion for summary judgment are admissible evidence. Under Federal Rule of Evidence 803(6), "[a] record of an act, event, condition, opinion, or diagnosis if:
    (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
    (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
    (C) making the record was a regular practice of that activity;
    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
    (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Here, no custodian has testified, and there is no certification that the employment records Green produced satisfied FRE 803(6)(A), (B), or (C). The court therefore has no basis to determine whether the records were maintained contemporaneously and accurately reflect the number of Green's absences.

polices that employees must follow regarding attendance. *See Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 602 (7th Cir. 1998) ("[I]t is not the absence itself but rather the excessive frequency of an employee's absences in relation to that employee's job responsibilities that may lead to a finding that an employee is unable to perform the duties of his job. Consideration of the degree of excessiveness is a factual issue well suited to a jury determination.").

### iii.  Adverse employment action because of a disability

Green must show that she suffered an adverse employment action because of her disability to show discrimination under the ADA. *Gogos*, 737 F.3d at 1172. "If the employer would have undertaken the same action in the absence of a disability, there is no ADA claim." *Walters v. Mayo Clinic Health Sys.-EAU Claire Hosp., Inc.*, 998 F. Supp. 2d 750, 767 (W.D. Wis. 2014) (citing *Serwatka v. Rockwell Automation, Inc.,* 591 F.3d 957, 962 (7th Cir.2010) (The ADA's "'because of' language demands proof that a forbidden consideration . . . was a 'but for' cause of the adverse action complained of.")).

A plaintiff can show the employer's discriminatory motive under one of two methods. "Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden." *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522,* 657 F.3d 595, 601 (7th Cir.2011). "The type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.*

10

Here, the summary judgment record contains sufficient circumstantial evidence of discriminatory motive to warrant trial. Green was treated in the emergency room for her ovarian cyst on January 29, 2013. A few weeks later, on February 19, 2013, she was scheduled to work but called the Spa to report that the cyst was causing her pain and exacerbating her lumbar radiculopathy. It was the second consecutive day that Green requested to stay home from work on account of her medical conditions.

On February 20, 2013, Kossof phoned Green and told her she was being terminated. Green alleges that Kossof acknowledged that he was terminating her because she had "too many medical problems." Compl. ¶ 9. Green testified that she was given no prior warnings, verbal or written, that her work attendance was a problem; nor does the Spa submit any evidence showing that it gave her such a warning. Green further testified that she asked Kossof to reconsider his decision during their phone conversation on February 20, 2013. Green told Kossof that she loved her job, to which Kossof replied, "Sometimes we're not able to do the things that we love." (Green Dep. 41:12-16).

Green's testimony provides direct evidence that Kossof terminated her employment because she requested time off to manage her disabilities. The Spa insists that, even if Kossof made the statements that Green attributed to him, terminating Green because of her absenteeism is a legitimate, non-discriminatory reason. This argument, however, mirrors the Spa's challenge to Green's qualification to sue under the ADA. Both that challenge and the Spa's present argument require resolution of whether Green's absences were so irregular that they prevented her from performing the essential functions of her job. Because the court has already concluded

11

that the excessiveness of Green's absences is an issue of fact, the Spa cannot establish that its basis for terminating her was legitimate and nondiscriminatory as a matter of law.[4]

---

[4] Green asserts that she is entitled to summary judgment on her ADA discrimination claim because the Spa's proffered explanation for her termination, her purported absenteeism, is pretextual. Green asserts that she can show pretext through evidence that the Spa (1) had an ulterior motive for terminating her employment, and (2) treated a similarly situated employee differently.

Green, however, presents insufficient evidence for the court to make either finding of pretext. First, with respect to the Spa's alleged ulterior motive, Green testified that approximately six months after the Spa hired her, Kossof approached her to discuss employment benefits. During this conversation, Kossof informed Green that, although the Spa offered health insurance coverage to its employees, extending those benefits to Green would have caused the Spa's rates to increase for all employees. (*See* Green Dep. 23:22-25:23). In his affidavit, Kossof admits explaining "the objectively true costs of the plan to Ms. Green" and "that an individual plan obtained through the market may be cheaper for her." Kossof Aff. ¶ 35. But he maintains that Green never was "denied access to the Salon and Spa's group health plan." *Id.* Green alleges that she was, in fact, denied coverage. She further contends that Kossof terminated her in anticipation of the implementation of the Affordable Care Act's requirement that employers with fifty or more full-time employees offer "'a group health plan or group health insurance coverage' that provides 'minimum essential coverage." *See Catholic Health Care Sys. v. Burwell*, No. 14-cv-427 , 2015 U.S. App. LEXIS 13813, at *3 (2d Cir. Aug. 7, 2015) (quoting 26 U.S.C. § 5000A(f)(2)). This requirement, referred to as the employer mandate, was "scheduled to take effect on January 1, 2014." *Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d 243, 248 (11th Cir. 2014) (Martin, J., dissenting) (citing Pub. L. No. 111–148, § 1513(d), 124 Stat. 119, 256). The full implementation of this provision has since been delayed until 2016. *Hotze v. Burwell*, 784 F.3d 984, 988 (5th Cir. 2015).

Green argues that, in July 2013, Kossof anticipated having to insure Green pursuant to the Affordable Care Act by January 2014, when the employer mandate was originally scheduled to take effect. But she admits that no one from the Spa ever told her that she was actually terminated for this reason. (*See* Green Dep. 217:20-23). Nor did Green depose Kossof, so the court lacks testimony from him to determine whether he harbored such a motive when terminating her.

Second, Green's other proffered ground for pretext—that the Spa treated her differently from a similarly situated employee—lacks sufficient support in the summary judgment record. *See Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir. 1996) (noting that an "ADA plaintiff [can] state a disparate treatment claim and use either direct evidence or the indirect *McDonnell-Douglas* method to establish the existence of discrimination"). To prove her theory of disparate treatment, Green would have to show that the Spa tolerated a similarly situated employee's comparable number of absences. *See Kittling v. Centennial Beauregard*

### B. Reasonable Accommodation Claim

"The ADA requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). "In order to establish a prima facie case of failure to accommodate under the ADA, 'a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.'" *Cloe*, 712 F.3d at 1176 (quoting *Kotwica v. Rose Packing Co.,* 637 F.3d 744, 747-48 (7th Cir. 2011)).

Here, the Spa argues that Green's reasonable accommodation claim is deficient because none of the accommodations she requested were reasonable. For instance, Green asked the Spa to hire additional massage therapists to lighten her and her coworkers' workload. But the Seventh Circuit has repeatedly held that a request to hire extra staff "to help perform" some of the disabled employee's duties is not a reasonable accommodation. *See Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir. 1997) (holding that an employer is not required to accommodate an employee who cannot perform certain duties of a job by hiring someone else to perform those duties). The Spa further argues that it reasonably accommodated Green's request to use a particular massage room. Specifically, Green asked her supervisor, Jedrzejek, if she

---

*Cellular, L.L.C.*, 447 F. App'x 614, 619 (5th Cir. 2011) ("when addressing whether similarly situated individuals were treated more favorably, the proper comparison is between Plaintiff and individuals with numerous absences, as opposed to employees with a single unexcused absence, as urged by Plaintiff"). Green provides the court with no evidence that is both admissible, at least this stage, and shows that the employee Green identifies as similarly situated, Babicz, called off work as often as Green did and avoided discipline.

13

could perform massages in the massage room on the ground floor, Room Five, in order to avoid climbing the stairs throughout the work day to wash laundry and complete other tasks. Green claims that the Spa should have granted her request for unconditional use of the room. Instead, whenever Babicz was at work, she was allowed to use the room over Green's protest. The Spa counters that Babicz's preference took priority because she was more senior. Indeed, "the ADA does not require an employer to abandon legitimate, nondiscriminatory company policies like . . . seniority." *Doner v. City of Rockford, II*., 77 F. App'x 898, 901 (7th Cir. 2003)." This authority suggests that Green cannot predicate her reasonable accommodation on the Spa's deference to Babicz's room preference because it was following a policy of seniority.

Nevertheless, the court denies the Spa's motion for summary judgment on Green's reasonable accommodation claim because, contrary to the Spa's Statement of Facts, Green made at least one additional request: she asked to reduce her hours. *See* Spa's SOF ¶ 51 ("During her employment, Ms. Green requested only two accommodations related to her disability."). In its motion for summary judgment, the Spa ignores this request for a modified schedule, even though the ADA provides that a "reasonable accommodation" may include "part-time or modified work schedules." *See* 42 U.S.C. § 12111(9)(B). Here, lightening Green's workload might have enabled her to complete her duties. Green testified that she experienced pain on the job during longer work days, when she performed upwards of five to six massages in a day. Comparing Green's production to that of her coworker, Babicz, suggests that the Spa could have accommodated Green's request for fewer hours. Business records from the Spa that Green submitted in support of her motion for summary judgment show that between June 4, 2012 and March 10, 2013, she performed 365 total services that generated $18,400.10 in revenue. By comparison, from June 26, 2012 to February 20, 2013, Babicz performed 144 total services,

14

netting the Spa $11,451.50 in revenue. That the Spa allowed Babicz to perform roughly half the services Green performed over a similar time frame suggests the Spa could have granted Green's request for reduced hours.

Moreover, the Spa has submitted insufficient evidence to show that it engaged with Green in an interactive discussion to find an appropriate accommodation, as the ADA requires. "Upon receiving an accommodation request . . . the ADA obligates the employer to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances.'" *Id.* (citation omitted). *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176-78 (7th Cir. 2013) (citations omitted). "This process brings the employee and employer together in cooperation to identify the employee's precise limitations and discuss accommodation which might enable the employee to continue working." *Id.* (quotation marks omitted). "If this process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." *Id.* (quotation marks omitted). The Seventh Circuit has instructed courts to "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Beck v. Univ. of Wis. Bd. of Regent*s, 75 F.3d 1130, 1135 (7 th Cir. 2005); *see also* 29 C.F.R. § 1639.2(o)(3).

In this case, the record does not show whether, or if, the Spa sufficiently took part in the required dialogue. Neither Green nor the Spa adequately briefed this issue.

In sum, genuine issues of material fact exist regarding whether the Spa could have reasonably accommodated Green's disabilities. The Spa's motion for summary judgment on Green's reasonable accommodation claim is therefore denied.

15

### C. Gender Discrimination

"Title VII of the Civil Rights Act of 1964 forbids an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009) (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff may prove gender discrimination either directly or indirectly, just as in an ADA claim. *Antonetti*, 563 F.3d at 591. Under "the indirect burden-shifting method of proof explained in" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff "must first establish a prima facie case of discrimination by proving that: '(1) [she is a] member of a protected class; (2) [she was] performing [her] job satisfactorily; (3) [she] suffered an adverse employment action; and (4) [a] similarly situated employee[] outside of [her] protected class [was] treated more favorably." *Id.* (quoting *Goodwin v. Bd. of Trustees of the Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006)).

In this case, Green's theory of gender discrimination is that she was terminated because she was impaired by an ovarian cyst, and since only women can develop this type of impairment, it is a proxy for gender discrimination. Green, however, concedes that she has no direct evidence of gender discrimination. (*See* Green Dep. 95:18-96:20). Nor has Green offered any evidence to support the indirect method of proof. She admits that no similarly situated male employee exists, as the Spa has employed only women as massage therapists. Thus, regardless of the method of proof, Green cannot demonstrate that the Spa terminated her due to her gender. The Spa's motion for summary judgment on Green's gender discrimination claim is therefore granted.

## IV. CONCLUSION

For the reasons stated herein, the Spa's motion for summary judgment is granted as to Green's gender discrimination claim but denied as to Green's claims under the ADA. Green's motion for summary judgment is denied.

Going forward, the parties are strongly encouraged to reopen settlement talks. Green's deposition testimony indicates that her lumbar radiculopathy is now "far worse" than it was when she was a Spa employee. (*See* Green Dep. 183:16-184:2). The court questions whether Green can still perform the full array of massage therapist's duties at the Spa given the progression of her disability. If she cannot, then when Green lost the ability to perform the essential functions of her job will be an issue that affects the amount of damages she could receive, even if she ultimately prevails on her claims.

At the next status hearing, the parties shall inform the court whether they would be interested in holding a settlement conference with Magistrate Judge Gilbert. The court can assist the parties should they decide to explore settlement by recruiting counsel for the limited purpose of representing Green at the settlement conference. However, if the parties prefer to proceed toward trial, Green may refile her motion for attorney representation. The court denied her prior request for counsel in October 2013 without prejudice only because the Spa had yet to answer the complaint. *See* Order, ECF No. 7.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 24, 2015