**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-cv-6709 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| TEDDIE KOSSOF SALON & DAY SPA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Jennifer Green's motion for partial summary judgment [144] and Defendant Teddie Kossof Salon & Day Spa's motion for summary judgment [145]. For the reasons set forth below, both motions [144; 145] are denied. This case is set for further status on August 22, 2016 at 9:30 a.m. to set a schedule for pre-trial filings and to discuss the possibility of settlement.

**I.      Background**

The Court takes the relevant facts from the parties' Local Rule 56.1 statements [144-2; 147; 148; 151-1] and the summary judgment opinion by Judge Gottschall, who previously presided over this case [114]. Defendant Teddie Kossof Salon & Day Spa is located in Northfield, Illinois, and provides facials, massages, and body treatments for customers. In 2012 and 2013, Defendant employed five massage therapists, including Plaintiff Jennifer Green. Message therapists are paid a commission plus tips for their services and are scheduled to work in advance. Defendant requires its massage therapists to be physically at work during their scheduled shifts. [148, ¶¶ 8–10; 151, ¶¶ 8–10.] Defendant did not have a written sick leave policy. The customary practice was that an employee would call her manager if she needed a day off due to illness, and then staff would be reallocated if available.

Plaintiff suffers from lumbar radiculopathy—a chronic condition causing episodic back pain. When this condition flares, Plaintiff has difficulty sleeping as well as walking, standing, or sitting for extended periods of time. These flare ups are unpredictable. And when she experienced the symptoms related to this condition, Plaintiff sometimes could not perform her duties as a massage therapist. [148, ¶ 22; 151, ¶ 22 (stating that she would not work when the pain was four or more on a scale of ten).][1] When Plaintiff showed up for work, however, Defendant concedes that Plaintiff provided the expected level of service to its employees. [148, ¶ 18.] She was never disciplined for performance-related issues and there was never any problem with her actual performance as a massage therapist when she came to work. *Id.*

Nevertheless, Defendant contends that Plaintiff had a "habit of calling in sick to work shortly before her scheduled appointments were to begin." [148, ¶ 24.] The only support Defendant cites for that proposition is an affidavit from Plaintiff's direct supervisor, Dorota Jedrzejek, which contains the identical statement without any further elaboration. [148-2, ¶ 16.] Not surprisingly, Plaintiff disputes that characterization. [151-1, ¶ 24.] She testified at her deposition that she did not think that she was "sick much at all." [148-3, at 20 (77:23).] When she had to cancel appointments, it was often when she was "overbooked with sessions and [her] back would [become] aggravated," such as when she would have six sessions in a day and would be unable to make it past the fifth because of back pain. *Id.* at 77:24–78:3. When Plaintiff called in sick, another massage therapist would need to substitute in for her, and if no one was available, the appointment would be cancelled.

Plaintiff was admitted to the emergency room on January 29, 2013, for complications related to an ovarian cyst. Plaintiff was prescribed medication for symptoms related to the cyst

---

[1] The parties do not direct the Court to any evidence in the record regarding how often Plaintiff's pain met or exceeded a four on her subjective pain scale.

and was unable to predict the onset of those symptoms for the next few weeks. On February 18, 2013, Plaintiff was scheduled to work but informed Defendant that the cyst was causing her pain and exacerbating her lumbar radiculopathy. Plaintiff requested the day off, but Alan Kossof, who operates the spa, informed her that she either needed to come into work or apply for leave under the Family Medical Leave Act. Plaintiff asked if she could skip her morning appointment and perform her afternoon sessions, but Plaintiff ultimately performed all three of her scheduled massages that day. The next day, Plaintiff called in sick. On February 20, Kossof terminated Plaintiff. Plaintiff alleges that Kossof told her that he was terminating her because she had "too many medical problems." [8, at 18.]

Plaintiff filed suit against Defendant, asserting claims for gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), and for disability discrimination and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Plaintiff was originally litigating this case *pro se*, and filed two motions for summary judgment in 2014 [40; 51], both of which were denied as premature [62]. In 2015, both parties moved for summary judgment [80; 86], with each side contending it was entitled to summary judgment on Plaintiff's claims [82; 98].

On September 24, 2015, Judge Gottschall granted Defendant's summary judgment motion with respect to the Title VII claim, but otherwise denied the remainder of Defendant's motion and denied Plaintiff's motion in its entirety. [114.] As part of that decision, Judge Gottschall considered whether there was sufficient evidence in the record to show a triable issue of fact regarding each element of Plaintiff's ADA claim. Of relevance here, Defendant argued that Plaintiff "cannot prove she was qualified for the position of massage therapist because she was absent from work too often." *Id.* at 8. Judge Gottschall concluded:

> Here, however, there is insufficient evidence in the summary judgment record for the court to conclude that Green's absences prevented her from performing the essential functions of her job. The evidence the Spa submits to prove Green's absenteeism consists of an affidavit from Green's supervisor, Jedrzejek. Jedrzejek avers that Green "developed a habit of calling in sick to work shortly before her scheduled appointments were to begin." Jedrzejek Aff. ¶ 16. Green, a pro se plaintiff, denies that she developed such a habit, but she did not depose Jedrzejek to test her averments. Nonetheless, Jedrzejek's affidavit provides no insight into how many times Green actually cancelled her appointments "shortly before" they were scheduled to begin. *Id.* The court cannot find Green's claim deficient as a matter of law solely based on Jedrzejek's conclusory and unsubstantiated averment.

*Id.* at 8–9. Judge Gottschall further noted that Plaintiff had submitted employment records showing how often she and her co-workers were absent from work, but it was unclear if these records were accurate or admissible business records. In any event, she concluded that these records "raise a fact issue as to whether [Plaintiff's] absences prevented her from performing her job duties." *Id.* at 9. She then cited the Seventh Circuit's decision in *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591(7th Cir. 1998), for the point that "[i]t is not the absence itself but rather the excessive frequency of an employee's absences in relation to that employee's job responsibilities that may lead to a finding that an employee is unable to perform the duties of his job." [114, at 10.] She ended this section of her opinion with the statement that "[c]onsideration of the degree of excessiveness is a factual issue well suited to a jury determination." [114, at 10 (quoting *Haschmann*, 151 F.3d at 602).]

In January 2016, Plaintiff moved for reconsideration of Judge Gottschall's summary judgment decision [129], which was denied [133]. Judge Gottschall recruited counsel for Plaintiff [116; 120; 128] and set the parties on a path for trial [138]. Shortly thereafter, this case was reassigned from Judge Gottschall to this Court. [139.] At the second status hearing following this reassignment, the parties proposed filing new summary judgment briefs. [143.] Without fully appreciating the extent of the water under the bridge in the litigation to date, the

4

Court accepted the parties' proposal and struck the trial date. Both parties then moved for summary judgment [144; 145].

## II.     Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To establish that a material fact is undisputed, the movant "must support the assertion by * * * citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations * * *, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted). The "mere existence of a scintilla of evidence in support of the

[nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

### III.  Analysis

"The ADA prohibits employers from taking adverse employment actions against their employees because of a disability." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 606 (7th Cir. 2012); see 42 U.S.C. § 12112(a).  An employee may state a claim for discrimination under the ADA by advancing either (1) a failure to accommodate theory—that is, the employer failed to provide a reasonable accommodation for the employee's disability—or (2) a "disparate treatment" theory—that is, the employer treated the employee differently *because of* her disability. *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir. 1997).  To establish an ADA violation, the employee must prove "1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009) (citation omitted).  "No matter the type of discrimination alleged—either disparate treatment or failure to provide a reasonable accommodation—a plaintiff must establish first that [s]he was 'a qualified individual with a disability.'" *Sieberns*, 125 F.3d at 1022.

Under the ADA, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The employee must "pass a two-step test" to be a "qualified individual." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996).  "First, the individual must satisfy 'the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, *etc.*'"  *Id.* (quoting 29 C.F.R. app. § 1630.2(m)).  "Second, the

individual must be able to 'perform the essential functions of the position held or desired, with or without reasonable accommodation.'" *Id.* (quoting 29 C.F.R. app. § 1630.2(m)).

### A.    Plaintiff's Partial Summary Judgment Motion

Plaintiff has moved for what she characterizes as "partial summary judgment" "on the issue of whether she is a 'qualified individual.'"  [144.]  Her memorandum states that she seeks "summary judgment on the grounds that (A) throughout her employment, [Defendant] never took issue with her job performance or her attendance; (B) [Defendant] admits that it did not have a written attendance policy; and (C) [Defendant's] records – the sole source of information documenting [absences – are] untrustworthy to be admissible under [Federal Rule of Evidence] 803(6)(E)."  [144-3, at 1–7.]  This is not a proper summary judgment motion.

Plaintiff essentially seeks a directed finding in advance of the jury trial that she has satisfied the "qualified individual" element of her ADA claim.  Even assuming she was entitled to such a finding, that would not entitle her to "judgment as a matter of law" because she would still need to prove *all* of the *other* elements of her two ADA claims to prevail.  Fed. R. Civ. P. 56(a).  That fact that Judge Gottschall concluded that factual issues precluded granting summary judgment for *Defendant* on whether Plaintiff was a qualified individual in no way entitles *Plaintiff* to summary judgment on the same issue when she bears the burden of proof.

Regardless, Plaintiff's first two "grounds" misunderstand Defendant's argument for why she is not a qualified individual.  Defendant contends that Plaintiff's "erratic absences, last-minute cancellations, and unreliable attendance at work" means that she cannot perform the essential functions of her job.  [150, at 3]; accord *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015); *Byrne v. Avon Prods., Inc.,* 328 F.3d 379, 381 (7th Cir. 2003); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927–28 (7th Cir. 2001); *Jovanovic v. In-Sink-Erator*

*Div. of Emerson Elec. Co.*, 201 F.3d 894, 899–900 (7th Cir. 2000); *Waggoner v. Olin Corp.,* 169 F.3d 481, 483 (7th Cir. 1999). The fact that Plaintiff met her employer's expectations when she came to work does not foreclose a finding by the jury that she not qualified. "An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). Plaintiff does not cite any law showing that generally good performance at work or the absence of a sick leave policy forecloses such a conclusion. Judge Gottschall already concluded that this issue is one for the jury. Plaintiff offers no reason that this conclusion is wrong, and this Court will not disturb it.

Plaintiff's third ground is a motion *in limine* in disguise. Plaintiff criticizes Defendant for not yet having filed a certification under Federal Rule of Evidence 902(11) and contends that these employee time records are untrustworthy. [144-3, at 5–7.] Of course, *Plaintiff* submitted and relied on these records when opposing summary judgment in 2015, so it makes little sense for her to now claim these records are unreliable. [See 114, at 9 ("Green, not the Spa, produced employment records to show when Green and her coworkers were absent from work.").] Moreover, a 902(11) certification is only one way to satisfy the business records exception. If Defendant wants to admit these records, it could use a records custodian or other qualified witness pursuant to Federal Rule of Evidence 803(6)(D). In any event, no witnesses have been disclosed and no trial date is set. Federal Rule of Evidence 902(11) requires only "reasonable written notice" of a party's intent to rely on such a certification, and Plaintiff does not offer any reason to believe this deadline has passed. The parties are free to brief these employment records' admissibility when the time comes. But Plaintiff fails to show that this one evidentiary issue entitles her to summary judgment on her ADA claim in light of Defendant's opposing

evidence, including Jedrzejek's affidavit [148-2, ¶ 16]. Plaintiff's partial summary judgment motion [144] is denied.

## B. Defendant's Summary Judgment Motion

Defendant's motion seeks summary judgment on whether Plaintiff is a qualified individual as well. [146, at 1.] This motion is almost entirely a rehash of the same arguments rejected by Judge Gottschall. Defendant contends that Plaintiff's "regular or predictable attendance" was an essential function of her job, she could not attend work when she had a "flare up" of her lumbar radiculopathy symptoms, those flare ups occurred at unpredictable times, and her appointments would need to be cancelled when was no substitute was available for her. *Id.* at 3–5. According to Defendant, these "unplanned absences" were the reason for her termination and was not a pretextual reason to terminate her. *Id.* at 5–6.

As before, Defendant's argument is totally underdeveloped. Defendant still offers no record evidence as to when or how frequently these "flare ups" occurred, when or how often they resulted in Plaintiff missing work, specifically how much advance notice Defendant received of Plaintiff's absences, or when or how often Defendant had to cancel appointments because no massage therapist could step in for Plaintiff. The record is bare on these subjects and Defendant, as the movant, has failed to satisfy its initial burden under Rule 56.

To be sure, Ms. Jedrzejek avers that Plaintiff had a "habit" of calling in sick "shortly" before appointments were to begin. [148, ¶ 24.] Judge Gottschall described this same assertion as "conclusory and unsubstantiated" back in 2015 [114, at 9], and it did not become less conclusory or more substantiated with age. Likewise, Defendant vaguely states that "[s]ometimes the other massage therapists could not cover for Plaintiff," but offers no supporting evidence. [146, at 4.] "Sometimes" is not undisputed record evidence that could sustain entry of

summary judgment. As Defendant notes in responding to Plaintiff's motion, "[w]hether the erratic or unreliable absences disqualify an individual from a particular job is a fact-specific inquiry." [150, at 7.] The dearth of facts offered by Defendant precludes a finding that it is entitled to judgment as a matter of law.

Furthermore, "[a]n individual with a disability falls within the definition of a 'qualified individual with a disability' if she can perform the essential functions of the desired position *with reasonable accommodation*." *Jackson v. City of Chi.*, 414 F.3d 806, 812 (7th Cir. 2005) (emphasis added); see also *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 854 (7th Cir. 2015) ("However, [plaintiff] could perform the essential functions of the ramp serviceman position *with* a reasonable accommodation."). The Seventh Circuit has expressly declined to hold that "an individual with erratic attendance can never be a qualified individual with a disability under the ADA." *Jovanovic*, 201 F.3d at 900. As the Seventh Circuit explained,

> We are not establishing a hard-and-fast rule that no absences from work need be tolerated. We have indicated our willingness to look to the reasonableness of an accommodation of a requested medical leave. In some cases, even working part-time is an accommodation which can and often should be made. In some jobs—though almost certainly not in production jobs such as [plaintiffs]—working at home for a time might be an option. However, in evaluating any requested accommodation, the issue will be whether the hardship imposed on the employer by it is 'undue.'"

*Waggoner*, 169 F.3d at 485.

None of Defendant's "evidence" shows that Plaintiff could not have performed the essential functions of her job even if she had been provided a reasonable accommodation. Plaintiff testified that her flare ups mainly occurred when she was overbooked and she would need to cancel her last session of the day. [148-3, at 20 (77:23–78:4.).] She requested a modified work schedule as an accommodation. See [114, at 4]; 42 U.S.C. § 12111 (defining "reasonable accommodation" to include "modified work schedules"). Whether a modified

schedule would have allowed Plaintiff to meet the attendance needs of Defendant and still perform the essential functions of her job is a factual question that cannot be resolved on this record. Accordingly, there is and remains a genuine dispute of material fact concerning whether Plaintiff could perform her essential job duties at the spa with or without a reasonable accommodation. Defendant's motion for summary judgment [145] is denied.

## IV.  Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion to partial summary judgment [144] and Defendant's motion for summary judgment [145]. This case is set for further status on August 22, 2016 at 9:30 a.m. to set a schedule for pre-trial filings and to discuss the possibility of settlement.


Dated: July 26, 2017

_____
Robert M. Dow, Jr.
United States District Judge